### NEW AMSTERDAM CASUALTY CO. v. HARTFORD ACCIDENT & INDEMNITY CO.
#### No. 1842.

District Court, W. D. Kentucky.
March 25, 1937.

Ben F. Washer and Huffaker, Hogan & Berry, all of Louisville, Ky., for plaintiff.

Davis, Boehl, Viser & Marcus, of Louisville, Ky., for defendant.

HAMILTON, District Judge.

This case is pending before me on defendant's demurrer to the petition. The plaintiff is a New York corporation, the defendant a Connecticut corporation, and both are engaged in the general insurance business and admitted to do business in the commonwealth of Kentucky.

The Louisville Taxicab & Transfer Company, a corporation, is engaged in operating taxicabs and trucks for hire, and was the owner of a Chevrolet truck. The Kaufman Straus Company, a corporation, is engaged in the retail merchandising business at Louisville, Ky., and rented the above truck. The defendant, on January 1, 1934, issued its stock company automobile policy to the Louisville Taxicab & Transfer Company insuring that company against any loss by liability imposed by law for bodily injuries or death for a period of one year, by reason of the operation of said truck, liability being limited to

$10,000 for any one accident. The provisions of the policy material to a decision of this demurrer are as follows:

"A. This policy is extended to cover as an additional assured any person while operating any automobile described in the Declarations or any person, firm or corporation legally responsible for its operation, where the disclosed and actual use of the automobile is for 'pleasure and Business' or 'Commercial' purposes as defined in Item 8, and the automobile is being so used with the permission of the named assured, or if the named assured is an individual with the permission of any member of the assured's household (over twenty-one years of age) other than a chauffeur or domestic servant. Provided however, (1) that this extension of the policy shall not enure to the benefit of an automobile sales or service agency or garage of any description or parking station; or the agents or employees thereof; (2) that the insurance under this policy shall be available first to the named assured, and the remainder, if any, to other persons entitled to the benefits hereunder; (3) that the defenses of the company against the named assured shall be available to it against any additional assured included hereunder.

"L. If the named assured carries any other insurance covering concurrently a claim covered by this policy, he shall not recover from the company a larger proportion of such claim than the sum hereby insured bears to the whole amount of valid and collectible concurrent insurance. If others entitled to the benefits of this policy by the provisions of Condition A hereof, are covered by other valid insurance against a claim otherwise covered by this policy, said Condition A shall be void."

On April 18, 1934, the plaintiff issued its stock automobile policies to the Kaufman Straus Company, insuring that company against any loss by liability imposed by law for bodily injuries or death for a period of one year by reason of the operation of trucks, being limited to $50,000 for any one accident. It was provided therein:

"New Amsterdam Casualty Company, a stock company (Hereinafter Called The Company), does hereby agree with the named assured as respects bodily injuries or death suffered, or alleged to have been suffered by any person or persons other than the named Assured as the result of ac-

cidents occurring in the continental limits of the United States and Canada while this Policy is in force, by reason of the ownership, maintenance or use of any automobile or trailer described in the Schedule of Statements, including the loading and unloading of such automobile or trailer;

"(1) To insure the Assured, subject to the limitations and conditions hereinafter provided, within the limits expressed in the Schedule of Statements, against loss from the liability imposed by law upon the Assured for damages on account of such injuries or death;

"(2) To insure the Assured, subject to the limitations and conditions hereinafter provided, within the limit expressed in the Schedule of Statements, against loss from liability imposed by law upon the Assured on account of accidents resulting in damage to or the destruction of property, including the resultant loss of use thereof, (excluding property of the Assured, property in the custody of the Assured or his employees, property which is rented or leased and for which the Assured is legally responsible, or property carried in or upon any automobile or trailer covered hereunder), resulting from such accidents. This agreement shall be effective only in the event that premium therefor is specifically shown in the proper division provided in the Schedule of Statements;

"(3) To insure the Assured, subject to the limitations and conditions hereinafter provided, within the limit expressed in the Schedule of Statements, against loss from damage to or destruction of, any such automobile or trailer, including its operating equipment while attached thereto, caused solely by accidental collision with another object, or by upset (excluding damage or destruction caused directly or indirectly by fire, theft, robbery or pilferage, damage to or the destruction of tires when due to puncture, cut, gash, blowout or other ordinary tire trouble, and excluding in any event damage to or the destruction of tires unless caused by an accidental collision or upset which also causes other damage to or the destruction of any such automobile or trailer). This agreement shall be effective only in the event that premium therefor is specifically shown in the proper division provided in the Schedule of Statements."

"(9) To extend the insurance provided by this Policy under Agreements (1) and (2) so as to be available in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles or trailers described in the Schedule of Statements, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant; except that the terms and conditions of this Policy shall not be available to a public automobile garage, automobile repair shop, automobile sales agency, automobile service station, or the agents and employees thereof. The total amount of insurance under this Policy shall be as set forth in the Schedule of Statements and shall be applied first to the protection of the named Assured and the remainder, if any, to the protection of any person, firm or corporation entitled to protection under this paragraph. The unqualified term 'assured' wherever used in this Policy shall include in each instance any other person, firm or corporation entitled to insurance under the provisions and conditions of this paragraph, but the qualified term 'named Assured' shall apply only to the Assured named and described as such in the Schedule of Statements. In the event an automobile or trailer covered by this Policy is sold, transferred or assigned, the insurance provided herein shall not extend to such purchaser, transferee or assignee except by the written consent of the Company endorsed hereon. This paragraph shall not apply as respects any automobile or trailer used to carry passengers for a consideration either actual or implied."

"Condition H: · If the named Assured carries any other insurance covering concurrently a claim covered by this Policy, he shall not recover from the Company a larger proportion of any such claim than the sum hereby insured bears to the whole amount of valid and collectible concurrent insurance. If any other Assured included in this insurance is covered by valid and collectible insurance against a claim also covered by this Policy, he shall not be entitled to protection under this Policy."

"In consideration of the premium determined as hereinafter provided for, it is

hereby understood and agreed by and between the named assured and the company that this policy shall cover the operation of all automobiles and trailers of the type stated in the policy hired by the assured, during the term thereof and used for the purpose stated in the Declaration, without a specific description of, and specific premium charge for each automobile to be covered as required by the policy."

"It is further understood and agreed that the provisions of this policy or any endorsement attached hereto shall not extend to cover the liability of any individual firm or corporation, from whom automobiles and trailers covered hereunder have been hired.

"Condition (H) of the policy (the co-insurance clause) is hereby eliminated from the policy, and it is understood and agreed that if the named assured is covered under a policy taken out by the owner or operator of an automobile insured under this endorsement, the coverage under this endorsement shall be an excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator of the car."

On December 24, 1934, while Kaufman Straus & Co. was operating the Chevrolet truck, it collided with John Perkins on one of the streets of Louisville and fatally injured him. On February 18, 1935, Perkins' administrator instituted an action against Kaufman Straus & Co. in the Jefferson circuit court, Jefferson county, Ky., seeking to recover damages for his intestate's death. Kaufman Straus requested the plaintiff in this action and the Louisville Taxicab Company to defend, and the Taxicab Company called on the defendant in this action to defend. Perkins' suit was compromised for $14,000, of which sum the plaintiff admitted it owed $4,000, but insisted the defendant owed $10,000, the maximum sum under its policy. The plaintiff in this action contributed $9,000 to the Perkins' estate in settlement, and the defendant $5,000, under a written agreement that neither party waived any claim it had against the other for contribution, and that neither was the primary insurer of the Kaufman Straus Company.

On July 30, 1935, the plaintiff instituted this action in the Jefferson circuit court, Jefferson county, Ky., seeking to recover from the defendant $5,000, together with interest thereon, claiming it had paid this sum for the defendant's account in the settlement of the Perkins suit. In due time the action was removed to this court on the ground of diversity of citizenship.

The plaintiff insists that its policy was intended to be, and by its express terms was, additional insurance. It also claims Kaufman Straus paid the premium on defendant's policy in rental to the Taxicab Company for the truck; that the truck hire would have been less but for the defendant's liability policy.

The rights of the parties must be determined by the language of the respective policy contracts. Each insurer agreed to cover the same liability. The defendant limited its obligation to $10,000, and the plaintiff to $50,000, for a single loss, and each party undertook to provide as to it a secondary liability, the defendant's contract being in the following language: "If others entitled to the benefits of this policy by the provisions of condition A hereof, are covered by other valid insurance against a claim otherwise covered by this policy, said condition A shall be void."

The plaintiff sought to protect itself by this provision: "The coverage under this indorsement shall be an excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator of the car."

The contracting insurance carriers and the insured intended that it should be protected from lawful liability to the maximum amount of the respective policies, and neither insurer contracted to pay double liability. The least that may be said is that the provisions of the respective policies as to other insurance cancel each other and this results in making them coinsurers. This doctrine operates to the protection of insurance companies against excessive insurance, and where it is made to appear that the insurance carried by the insured is in excess of the loss, then the loss will be distributed pro rata among the coinsurers. In the earlier application of this doctrine, the right of contribution was allowed as between coinsurers. In later years, the policy contracts have generally had inserted in them a pro rata clause that limited liability of the insurer to the proportionate amount of the loss and insurance contracts have almost universally been written to avoid liability for double insurance.

The liability of coinsurers to the insured is several and not joint. Neither has any interest in the liability of the other, except a mathematical one, and the proportionate liability of one determines that of the other. The defendant's policy expressly provided that the assured included in the extended coverage under Clause A should be excluded if he had other insurance, and under this provision the conclusion might be reached that the defendant was not on the risk here in controversy, but it is unnecessary for me to decide that question. Interpreting the policies in the most favorable light to the plaintiff's contention, it was at least a coinsurer, and as it does not seek to recover from the defendant a greater sum than it would have been required to pay as a coinsurer, it is not entitled to any relief.

The plaintiff relies strongly on the case of the Commercial Casualty & Insurance Company v. Hartford Accident & Indemnity Company, 190 Minn. 528, 252 N.W. 434, 253 N.W. 888 (Supreme Court of Minnesota). In that case Strom was the owner of the truck, and his insurer had contracted that: "If any other person, firm or corporation included in this insurance is covered by valid and collectible insurance, against a claim also covered by this policy, such other person, firm or corporation shall not be entitled to indemnity or protection under this policy."

Strom rented his truck to Hanlon & Okes, general contractors, and furnished the driver. The insurance carrier for Hanlon & Okes provided in its policy:

"It is hereby understood and agreed that this policy is only intended to cover the interest of the named assured with respect to use in connection with the assured's business of automobiles and trailers hired or owned by independent contractors, and that this policy shall not extend to cover the interest of any individual, firm, or corporation who may operate automobiles or trailers covered hereunder. * * *

"It is understood and agreed that, if the named assured is covered under a policy taken out by the owner or operator of an automobile insured under this endorsement, that the coverage under this endorsement shall be an excess coverage over and above the valid and collectible insurance under the policy taken out by the owner or operator of the car."

The truck, while being driven by its owner injured Stratton, and his insurer paid $1,500 and sued the insurer of Hanlon & Okes for contribution. The Minnesota court held that Strom's insurer was primarily liable. An examination of the opinion shows the court based its decision on who was first liable for the injury to Stratton, and as Strom's driver was driving the truck at the time of the injury, the relationship of independent contractor existed as between Strom and Hanlon & Okes, and the insurance carrier of the latter was relieved of liability.

In the case at bar the truck was being operated by the driver of plaintiff's insured, and there is nothing in the pleadings to indicate that the Louisville Taxicab & Transfer Company, defendant's insured, was in any way liable for the accident.

Each of the parties to this action relies on the case of Hartford Steam Boiler Inspection & Insurance Company v. Cochran Oil Mill & Ginnery Company, 26 Ga. App. 288, 105 S.E. 856. In that case the insured had two insurers, one limiting its liability to injuries growing out of boiler explosions; the other being general. The loss involved grew out of a boiler explosion, and the Georgia court held the boiler insurer primarily liable because of the source of the liability. The plaintiff undertakes to make the cited case applicable because the defendant in the case at bar, in its policy, specifically described the truck causing the injury out of which the liability grew. The similarity of things named in the policies is not controlling, but the resting liability must be determined from the language of the contracts. As I have heretofore pointed out, the extended provision of defendant's policy was void if other insurance was extant, and the plaintiff concedes it was the Kaufman Straus insurer unless the defendant's policy covered it.

The Georgia case determined the liability between two insurance carriers with the same insured. There is nothing in that opinion out of which support could be found to uphold plaintiff's contention that the defendant in the case at bar was the primary insurer.

The case of Penn v. National Union Indemnity Company (C.C.A.) 68 F.(2d) 567 is nearer in point. In that case a Buick car, owned by White and covered by liability insurance, was being towed by a borrowed truck belonging to the Harris Transfer & Warehouse Company, also covered by liability insurance, and while being so

transported seriously injured the appellant Penn. Harris Company's insurer, the appellee, contracted in its policy that the insurance should be available in the same manner as to the insured to any person or persons while riding in or legally operating any automobile covered by the policy. It was also provided in the policy that in the event of bankruptcy or insolvency of the insured a direct action against the insurer might be maintained by any person injured and covered by it.

The appellant, after recovery against White and collection of part of the judgment from his insurance carrier, instituted direct action against the insurance carrier of the Harris Company, alleging its bankruptcy or insolvency. Among the provisions of the Harris Company policy was the following: "F. Other insurance. If the named assured carries other insurance covering concurrently a loss covered by this policy, he shall not recover from the Company a larger proportion of any such loss than the sum hereby insured bears to the whole amount of valid and collectible insurance applicable thereto, and if such other insurance be that of this Company the Named Assured must elect under which policy of the Company all claims arising out of such loss shall be treated and thereafter the Company shall not be liable to the Named Assured in connection with such loss under any other policy. If any Assured other than the Named Assured is covered by valid and collectible insurance against a loss covered hereby, such Assured shall have no right of recovery under this policy."

The court, in holding the Harris Company's carrier free of liability, said: "Apparently the form of the policy involved has not been heretofore passed upon by any court. At least we are not advised of any published decision. However, general principles govern. It is elementary that a policy of insurance, if ambiguous, must be construed most strongly against the insurer. There is also the well-settled rule that the parties are at liberty to make such contract as they please, provided they do not contain clauses prohibited by law or public policy, and the provisions in favor of the insurer are reasonable and just. The policy in suit is plain enough to require no construction. Conceding that White was legally operating the truck, he would have been covered were it not for the fact that he had other insurance. As it is, he was not covered at all by the pol-

icy issued to the Harris Company, and appellant has no right of action against appellee."

The defendant in the case at bar was not a primary insurer of the Kaufman Straus Company. It, therefore, follows that defendant's demurrer to plaintiff's petition should be sustained.